UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| **In re:** | § | Chapter 11 |
| | § | |
| **CCNG ENERGY PARTNERS, L.P.,** | § | Case No. 15-70136 |
| **CCNG ENERGY PARTNERS GP, L.L.C.,** | § | Case No. 15-70141 |
| **MOSS BLUFF PROPERTY, L.L.C.,** | § | Case No. 15-70137 |
| **TRINITY ENVIRONMENTAL** | § | |
| **CATARINA SWD, L.L.C.,** | § | Case No. 15-70138 |
| **TRINITY ENVIRONMENTAL SERVICES, L.LC.,** | § | Case No. 15-70139 |
| **TRINITY ENVIRONMENTAL SWD, L.L.C.,** | § | Case No. 15-70135 |
| **AND TRINITY ENVIRONMENTAL** | § | |
| **TITAN TRUCKING, L.L.C.** | § | Case No. 15-70140 |
| | § | |
| **Debtors.** | § | Joint Administration Requested |

**EMERGENCY MOTION OF THE OPERATING SUBSIDIARIES TO
DISMISS THE OPERATING SUBSIDIARIES' BANKRUPTCY CASES FOR
LACK OF CORPORATE AUTHORITY**

Trinity Environmental SWD, L.L.C. ("*Trinity SWD*"), Trinity Environmental Catarina SWD, L.L.C. ("*Catarina*"), Trinity Environmental Titan Trucking, L.L.C. ("*Trucking*"), Moss Bluff Property, L.L.C. ("*Moss Bluff*") and Trinity Environmental Services, L.L.C. ("**TES**") (collectively, the "Operating Subsidiaries") by and through their manager Pirinate Consulting Group ("Pirinate") hereby file this Emergency Motion to Dismiss the Operating Subsidiaries' Bankruptcy Cases for Lack of Corporate Authority (the "*Motion*"). In support of their Motion, the Operating Subsidiaries respectfully represent as follows:

**Preliminary Statement**[1]

1. The Operating Subsidiaries' bankruptcy cases should be dismissed because the cases were filed, and are being prosecuted, without the requisite corporate authority. To the contrary, the cases were filed in knowing violation of the Operating Subsidiaries' Company Agreements. Despite the lack of corporate authority, CCNG Energy Partners, L.P. (the

---

[1] All otherwise undefined terms in this Preliminary Statement section have the meanings set forth below.

6390278.1

"*Parent*") took the unilateral step to purport to file bankruptcy for each of the Operating Subsidiaries in an effort to avoid the effect of the replacement of the Parent as Manager of the Operating Subsidiaries by Guggenheim Corporate Funding LLC ("Guggenheim") on October 9, 2015. The change in Manager was effectuated by Guggenheim pursuant to remedies under its Pledge Agreement with the Parent.[2]

2. Pirinate, as Manager of the Operating Subsidiaries, has not had an opportunity to attempt to reach a resolution with Guggenheim and therefore requests that the Operating Subsidiaries' bankruptcy cases be dismissed.

## Jurisdiction and Venue

3. The Court has authority to determine this Motion pursuant to 28 U.S.C. § 1334 and the standing order of reference of the District Court. This matter is a core proceeding. 28 U.S.C. § 157. Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

A. **The Debtors**

4. The Parent is the sole member of each of the Operating Subsidiaries and, until October 9, 2015, was the sole manager for each of the Operating Subsidiaries. All of the Debtors' operations are performed by the Operating Subsidiaries. On information and belief, aside from the Parent's ownership interest in the Operating Subsidiaries, all material assets are owned by the Operating Subsidiaries.

---

[2] Absent the consent of the duly appointed manager of each of the Operating Subsidiaries – Pirinate – the Parent lacks the authority to take any action or seek any relief before this Court with respect to the Operating Subsidiaries, including the initiation of their purported Chapter 11 cases.

B. **The Pre-Petition Credit Facility**

5. On information and belief, the Debtors owe Guggenheim over $170,000,000.

C. **Appointment of Pirinate Consulting Group, LLC, as Manager for each of the Operating Subsidiaries**

6. On October 9, 2015, Guggenheim issued a Default Notice that, as a result of the Designated Defaults, provided that the right to vote the membership interests in each of the Operating Subsidiaries was vested exclusively in Guggenheim pursuant to section 7(e) of that certain Second Amended and Restated Pledge and Security Agreement dated as of January 31, 2014, by and among the Borrowers, the Subsidiary Guarantors and Guggenheim (the "***Pledge Agreement***").

7. Guggenheim additionally exercised its rights under section 7(e) of the Pledge Agreement and issued Written Consents dated October 9, 2015, as Sole Member and Sole Manager of each Operating Subsidiary, signed by Guggenheim, as attorney-in-fact for the Parent (each, a "***Written Consent***", and collectively, the "***Written Consents***"). True and correct copies of the Written Consents are attached hereto as **Exhibits A-1 through A-5**. The Written Consents, each effective as of October 9, 2015:

    (a) removed Parent as sole manager of such Operating Subsidiary,

    (b) appointed Pirinate as the new manager of such Operating Subsidiary, and

    (c) authorized an amendment to such Operating Subsidiary's company agreement (each, a "***Company Agreement Amendment***" and collectively, the "***Company Agreement Amendments***").[3]

8. Pursuant to the Company Agreement Amendments dated October 9, 2015, Guggenheim exercised its rights pursuant to the Pledge Agreement and, among other things,

---

[3] Included with the Written Consents were Acceptances of Agreement dated October 9, 2015, in which Pirinate accepted its appointment as manager of the Operating Subsidiaries.

modified each Operating Subsidiary's company agreement to require the manager's (now Pirinate) prior written consent:

    (a)    for such Operating Subsidiary to file for bankruptcy protection,

    (b)    for any member of such Operating Subsidiary to take any action or have any power of authority with respect to such Operating Subsidiary, and

    (c)    for any officer of such Operating Subsidiary to take any action or have any power of authority with respect to such Operating Subsidiary.

**D.    The Unauthorized Bankruptcy Filings**

9.    On October 12, 2015 (the "*Petition Date*"), the Parent caused voluntary petitions for relief under Chapter 11 to be filed for each of the Debtors in the United States Bankruptcy Court for the Western District of Texas (the "*Court*"). The Chapter 11 petitions for the Operating Subsidiaries include Joint Consents signed by the Parent that purport to be effective "as of" September 28, 2015.[4] Further, notwithstanding the Parent's acknowledged receipt of the Company Agreement Amendments – requiring the written consent of Pirinate to any bankruptcy filing – Pirinate was never contacted regarding whether it would even consent to the Chapter 11 filings by the Operating Subsidiaries.

## Arguments and Authorities

**A.    Dismissal is Appropriate when a Bankruptcy Filing is Unauthorized**

10.    The Court should dismiss the bankruptcy cases of the Operating Subsidiaries pursuant to section 1112(b) because the bankruptcy filings were not authorized by the Operating Subsidiaries' manager – Pirinate – as required under the respective limited liability company agreements (collectively, the "*Company Agreements*").[5] Due to the unauthorized nature of the

---

[4] While resolutions allegedly authorizing the Chapter 11 petitions state that they were effective more than two weeks prior to the Petition Date, the Debtors' initial bankruptcy filings were "bare bones" filings with no material pleadings filed until a full two days after the Petition Date.
[5] True and correct copies of each of the First Amendments to the Operating Subsidiaries' Company Agreements

4

filing, the Court lacks jurisdiction over the Operating Subsidiaries' bankruptcy cases. Consequently, the Operating Subsidiaries' bankruptcy cases should be dismissed.

11. Section 1112(b) mandates that a court "shall" dismiss or convert a Chapter 11 case if "cause" is demonstrated. 11 U.S.C. § 1112(b)(1). While section 1112(b)(4) provides certain examples of "cause" to dismiss a Chapter 11 case, the list is non-exclusive. *In re Orchard at Hansen Park, LLC*, 347 B.R. 822, 825 (Bankr. N.D. Tex. 2006) ("While Rule 1112(b) does not include the issue of corporate authority, the list is nonexclusive."); *see also In re TMT Procurement Corporation*, 534 B.R. 912, 917 (Bankr. S.D. Tex. 2015) ("Section 1112(b)(4) contains a nonexhaustive list of examples of cause meriting conversion or dismissal."); *In re New Millenium Mgmt., LLC*, No. 13-35719-H3-11, 2014, Bankr. LEXIS 734 *13 (Bankr. S.D. Tex. Feb. 25, 2014) ("The Section 1112(b)(4) list of items identified as constituting cause for conversion or dismissal is non-exclusive."); *In re 1031 Tax Group, LLC*, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007) (citing 11 U.S.C. § 1112(b)(4)). Among the judicially established examples of "cause" to dismiss a Chapter 11 case is a lack of corporate authority to file the petition for relief. *See e.g.*, *Orchard*, 347 B.R. at 826 (dismissing Chapter 11 petition based on the failure to obtain unanimous consent of members required under LLC operating agreement); *In re Charles B. Marino*, 2010 Bankr. LEXIS 401, at **11–12 (Bankr. S.D. Tex. Feb. 9, 2010) (dismissing chapter 11 petition due, in part, to "questionable" corporate authority to file petition); *In re Gas Reclamation*, 51 B.R. 860, 865 (Bankr. S.D. Tex. 1985) (dismissing chapter 11 petition because there was no proper corporate authorization to file, nor any subsequent ratification on behalf of corporation); *In re Alpha Centauri Co.,* 2006 Bankr. LEXIS 4098, at *9 (Bankr. D.N.J. Jan. 25, 2006) (citing *In re AT Eng'g, Inc.,* 138 B.R. 285 (Bankr. M.D. Fla. 1992)); *In re Westerleigh Dev. Corp.*, 141 B.R. 38, 40–41 (Bankr. S.D.N.Y. 1992); *In

addressing bankruptcy filing authority are attached hereto as **Exhibits B-1 through B-5**.

5

6390278.1

*re American Globus Corp*. 195 B.R. 263, 265-66 (Bankr. S.D.N.Y. 1996) (noting a petitioner's failure to acquire shareholder approval required in the articles of incorporation as cause for dismissal absent acquiescence or ratification).

12. Where a bankruptcy petition is unauthorized, dismissal – as opposed to conversion – is the only appropriate remedy because, "the bankruptcy court <u>does not acquire jurisdiction</u> unless those purporting to act for the corporation have authority under local law 'to institute the proceedings.'" *In re Horob Livestock, Inc*., No. 06-60149-7, 2007 Bankr. LEXIS 3251, at *4–5 (Bankr. D. Mont. 2007) (emphasis added) (quoting *Hager v. Gibson*, 108 F.3d 35, 39 (4th Cir. 1997) (quoting *Price v. Gurney*, 324 U.S. 100, 106 (1945)); *New Haven Radio, Inc. v. Meister (In re Martin-Trigona)*, 760 F.2d 1334, 1340 (2d Cir. 1985) ("the issue is whether the court has 'personal' jurisdiction over the [entity]" is determined by whether the person filing the petition had authority at the time of filing or "whether the [entity], through its subsequent actions, ratified and accepted the filing."); *see also Globus* 195 B.R. at 266 (suggesting an unauthorized filing would result in a lack of jurisdiction).

13. As a matter of law, courts have no discretion to adjudicate an issue if the court lacks jurisdiction. *See Ruhrgas AG v. Marathon Oil Co*., 526 U.S. 574, 583 (1999) (stating that "subject-matter delineations must be policed by the courts on their own initiative even at the highest level"). "If the Court lacks subject matter jurisdiction, the Court has no power to adjudicate the claim and must dismiss the action." *In re Phillips*, No. 05-CV-1360-B, 2005 U.S. Dist. LEXIS 24311, at *2 (N.D. Tex. Oct. 19, 2005) (citing *Stockman v. FEC*, 138 F.3d 144, 151 (5th Cir. 1998)). "A federal district court is under a mandatory duty to dismiss a suit over which it has no jurisdiction and should not adjudicate the merits of the claim." *Farve v. Potter*, 342 Fed. Appx. 3, 4 (5th Cir. 2009) (quoting *Stanley v. Cent. Intelligence Agency*, 639 F.2d 1146, 1157

6390278.1

(5th Cir. 1981)). Thus, while section 1112(b)(1) gives the bankruptcy court wide discretion to determine if there is "cause" to dismiss or convert, where the "cause" constitutes a lack of jurisdiction, the court should dismiss the case because an unauthorized petition under state law prevents the court from acquiring jurisdiction over a bankruptcy petition.

14. A bankruptcy petition on behalf of a corporation may only be properly filed by those who have authority to act for the corporation under local law. *Price v. Gurney*, 324 U.S. 100, 106 (1945); *see also In re Phillips*, 966 F.2d 926, 934 (5th Cir. 1992) ("For many years, courts have consistently looked to state law to determine whether a person has authority to file a voluntary petition on behalf of a corporation"). It has long been recognized that "the initiation of the proceedings, like the run of corporate activities, is left to the corporation itself, i.e. to those who have the power of management." *Price*, 324 U.S. at 104. Therefore, like all corporate activities, the authority to file a bankruptcy petition on behalf of a corporate entity must derive from state law. *Keenihan v. Heritage Press, Inc.*, 19 F.3d 1255, 1258 (8th Cir. 1994) (citing *Price*, 324 U.S. at 106–07); *cf. Berger v. Newhouse (In re Pirhana, Inc.)*, 83 Fed. Appx. 19, 21 (5th Cir. 2003) (affirming bankruptcy court's jurisdiction over case based on review of applicable state law to determine authority of corporation to file).

B. **The Purported Manager Lacked Authority to file the Operating Subsidiaries' Chapter 11 Petitions**

15. In this case, the Company Agreements for the Delaware Operating Subsidiaries are governed by Delaware law and the LLC Agreements for the Texas Operating Subsidiaries are governed by Texas law. As set forth below, only Pirinate has the corporate authority to authorize the Operating Subsidiaries to seek relief under Chapter 11. Pirinate has not and does not consent to the filing of the petitions for the Operating Subsidiaries.

**C. The Parent lacked Corporate Authority under Delaware law to file the Delaware Operating Subsidiaries for Bankruptcy**

16. Under Delaware law, the authority of a member or manager to act on behalf of a limited liability corporation is governed by the terms of the agreement between the parties. *See* DEL. CODE ANN. tit. C § 18-402 (2008). Specifically, the Delaware Limited Liability Act (the "**DLLCA**") provides that a member or manager's authority to act can be limited by the agreement of the parties:

> <u>Unless otherwise provided in a limited liability company agreement</u>, the management of a limited liability company shall be vested in its members …; <u>provided however</u>, that if a limited liability company agreement provides for the management, in whole or in part, of a limited liability company by a manager, the management of the limited liability company, <u>to the extent so provided</u>, shall be vested in the manager who shall be chosen in the manner provided in the limited liability company agreement. … <u>Unless otherwise provided in a limited liability company agreement</u>, each member and manager has the authority to bind the limited liability company.

*Id.* (emphasis added).

17. As provided in section 402 of the DLLCA, the Company Agreements for each of the Delaware Operating Subsidiaries provides that each of the Delaware Operating Subsidiaries shall be managed by a manager. Specifically, the Company Agreements each provide that (1) "[t]he powers of the Company shall be exercised by or under the authority of, and the business and affairs of the Company shall be managed under the direction of, <u>one or more Managers</u>. …" and (2) "[s]ubject to the foregoing limitation and all other limitations in this Agreement, the Managers <u>shall have full, complete and exclusive power to manage and control the Company</u>, and shall have the authority to take any action they deem to be necessary, convenient or advisable in connection with the management of the Company …." *See* Company Agreements for Trinity SWD, Catarina, and Trucking, at §§ 3.1(a) and 3.2 (a) (emphasis added).

18. Pursuant to the Written Consents for the Delaware Subsidiaries, Pirinate was

appointed as the sole manager for each of the Delaware Subsidiaries. Based on the Manager's appointment, the Delaware Subsidiaries were unable to authorize the Chapter 11 filings without Pirinate's written consent under the Delaware Operating Subsidiaries Company Agreements.

19. In an attempt to evade the patent lack of corporate authority, the Parent filed the Delaware Operating Subsidiaries' Chapter 11 cases by signing a resolution with an "effective as of" date of September 28, 2015. This retroactive resolution is ineffective under Delaware law to authorize the Delaware Operating Subsidiaries bankruptcy cases under each of the Delaware Operating Subsidiaries' respective Company Agreements. When interpreting provisions in a limited liability company agreement, Delaware law provides for ordinary contract interpretation principles. *See Grace v. Ashbridge LLC*, No. 8348-VCN, 2013 Del. Ch. LEXIS 315, at *14 (Del. Ch. Dec. 31, 2013); *R & R Capital, LLC v. Buck & Doe Run Valley Farms, LLC*, No. 3803-CC, 2008 WL 3846318, at *1 (Del. Ch. Aug. 19, 2008) ("Ultimately, it is the contract that compels the decision in this case because it is the contract that 'defines the scope, structure, and personality of limited liability companies.'") (quoting *Fisk Ventures, LLC v. Segal*, No. 3017-CC, 2008 WL 1961156, at *1 (Del. Ch. May 7, 2008)). Thus, "'[w]hen the language of a . . . contract is clear and unequivocal, a party will be bound by its plain meaning, because creating an ambiguity where none exists could, in effect, create a new contract with rights, liabilities and duties to which the parties had not assented." *Grace*, 2013 Del. Ch. LEXIS 315, at **13–14 (quoting *Seaford Golf & Country Club v. E.I. duPont de Nemours & Co.*, 925 A.2d 1255, 1261 n.14 (Del. 2007)); *see also Spellman v. Katz,* No. 1838-VCN, 2009 Del. Ch. LEXIS 18, at **5–7 (Del. Ch. Feb. 6, 2009) (applying the summary judgment standard for ordinary contract disputes to a limited liability company agreement dispute). Here, the Written Consents and the amendments to the Delaware Subsidiaries' Company Agreements clearly and unambiguously

6390278.1

provided that the Parent "shall not take any action or fail to take any action that would result in a Bankruptcy Event with respect to the Company <u>without the prior written consent of the Manager</u>." *See* Written Consents for the Delaware Operating Subsidiaries, § 2(h) (amending and restating section 3.13 of the Delaware Operating Subsidiaries Operating Agreement) (emphasis added).

20. Further, Pirinate – the duly appointed Manager – has not approved, consented to, or any way ratified, the bankruptcy filing. Consequently, the filing of the Chapter 11 petitions for relief for the Delaware Operating Subsidiaries was unauthorized under Delaware law and the Bankruptcy Court lacks jurisdiction over the Delaware Operating Subsidiaries' bankruptcy cases. Therefore, the Delaware Operating Subsidiaries' bankruptcy cases should be dismissed under section 1112(b) of the Bankruptcy Code.

**D. The Parent Lacked Corporate Authority under Texas law to file the Texas Operating Subsidiaries for Bankruptcy**

21. Similar to Delaware, under Texas law, the authority of a member or manager to act on behalf of a limited liability corporation is governed by the terms of the agreement between the parties. *See* TEX. CODE ANN. § 101.052 (2010). Specifically, the Texas Business Organizations Code ("***TBOC***") provides that a member or manager's authority to act for can be limited by the agreement of the parties:

Sec. 101.052. COMPANY AGREEMENT.

(a) Except as provided by Section 101.054, <u>the company agreement</u> of a limited liability company governs:

    (1) <u>the relations among members, managers, and officers of the company, assignees of membership interests in the company, and the company itself;  and</u>

    (2) other internal affairs of the company.

(b) <u>To the extent that the company agreement of a limited liability company</u>

<blockquote>

<u>does not otherwise provide</u>, this title and the provisions of Title 1 applicable to a limited liability company govern the internal affairs of the company.

(c) Except as provided by Section 101.054, <u>a provision of this title or Title 1 that is applicable to a limited liability company may be waived or modified in the company agreement of a limited liability company.</u>

(d) <u>The company agreement may contain any provisions for the regulation and management of the affairs of the limited liability company</u> not inconsistent with law or the certificate of formation.

(e) A company agreement <u>may provide rights to any person</u>, including a person who is not a party to the company agreement, <u>to the extent provided by the company agreement</u>.

</blockquote>

TBOC § 101.052 (emphasis added).

22. As outlined in section 101.052 of the TBOC, the Company Agreements for each of the Texas Operating Subsidiaries provides that they shall be managed by a manager. Specifically, the TES Company Agreement provides that (1) "[t]he business and affairs of the Company <u>shall be governed by the Manager</u> . . ." and (2) the Manager "<u>shall have full and complete discretion to manage and control the business and affairs of the Company</u>, to make all decisions affecting the business and affairs of the Company and to take all such actions as it deems necessary or appropriate to accomplish the purposes of the Company as set forth herein." *See* TES Company Agreement at §§ 9.1(a) and 9.2(a) (emphasis added). Additionally, the Moss Bluff Company Agreement provides that (1) the Manager "shall have the right to, and shall be fully responsible for, <u>the management and control over the business of the Company</u>," and (2) the Manager "<u>shall make all decisions affecting the business of the Company</u>…" *See* Moss Bluff Company Agreement at § 4.1(a). Pursuant to the Written Consents for the Texas Subsidiaries, Pirinate was appointed as the sole manager for each of the Texas Operating Subsidiaries. Based on Pirinate's appointment, the Texas Operating Subsidiaries were unable to authorize the chapter 11 filings without Pirinate's written consent. *See* Written Consent for Moss Bluff § 2(n)

(amending and restating section 4.7(f) of the Moss Bluff Subsidiary Company Agreement); Written Consent for TES § 2(j) (amending and restating section 10.2 of the TES Company Agreement).

23. As with the Delaware Operating Subsidiaries, the Parent purported to authorize the Texas Operating Subsidiaries' Chapter 11 cases by signing resolutions with effective as of dates of September 28, 2015. These resolutions are equally ineffective under Texas law to authorize the Texas Subsidiaries' bankruptcy cases under the applicable Company Agreements. When interpreting provisions in a limited liability company agreement, Texas law provides for ordinary contract interpretation principles. *See Allen v. Devon Energy Holdings,* LLC, 367 S.W.3d 355 (Tex. App.—Houston [1st Dist.] 2012). Specifically, Texas law provides that when parties have bound themselves to an unambiguous contract, the courts will give effect to the manifest intent expressed therein. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515 (Tex. 1968). Here, the Written Consents and the amendments to the Texas Operating Subsidiaries' Company Agreements clearly provided that the Parent "shall not take any action or fail to take any action that would result in a Bankruptcy Event with respect to the Company without the prior written consent of the Manager." *See* Written Consent for the Moss Bluff at § 2(n) (amending and restating section 4.7(f) of the Moss Bluff Company Agreement) (emphasis added); Written Consent for TES § 2(j) (amending and restating section 10.2 of TES Subsidiary Company Agreement) (emphasis added).

24. Further, Pirinate – the sole manager for each of the Operating Subsidiaries – has not approved, consented to, or any way ratified, the bankruptcy filings. Consequently, the filing of the Chapter 11 petitions for relief for the Operating Subsidiaries was unauthorized under Delaware law and Texas law and the Court lacks jurisdiction over the Operating Subsidiaries

6390278.1

bankruptcy cases. Therefore, the Operating Subsidiaries' bankruptcy cases should be dismissed under section 1112(b) of the Bankruptcy Code.

### Non-Consent to Extension of 1112(b)(3) Deadlines

25. The Operating Subsidiaries do not consent to any extension of the deadlines to adjudicate this matter under section 1112(b)(3), and further requests expedited consideration of this Motion.

26. Additionally, sanctions may be appropriate for the improperly filed bankruptcy cases. *See, e.g., In re Blue Pine Group, Inc.*, 448 B.R. 267 (Bankr. D.Nev. 2010), *aff'd,* 457 B.R. 64 (9th Cir. BAP 2011), *aff'd and vacated, In re Blue Pine Group, Inc.,* (9th Cir., May 20, 2013, unpublished opinion) (Sanctions affirmed but reduced).

27. Pursuant to the Local Bankruptcy Rules, attached as Exhibit "C" is the form of Order which the Operating Subsidiaries seek to have entered on this Motion.

WHEREFORE, each of the Operating Subsidiaries requests that the Court enter an Order granting this Motion, dismissing each of the Operating Subsidiaries' bankruptcy cases, and granting each of them such other legal and equitable relief to which it is entitled.

Dated: October 15, 2015

Respectfully submitted,

**DYKEMA COX SMITH**

By:  */s/ Deborah D. Williamson*
Deborah D. Williamson
State Bar No. 21617500
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
(210) 554-5500
(210) 226-8395 (Fax)
dwilliamson@dykema.com

**PROPOSED ATTORNEYS FOR OPERATING SUBSIDIARIES**

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing instrument was served by electronic mail via the Court's ECF system to all parties authorized to receive electronic notice in this case on October 15, 2015.

                                     */s/ Deborah D. Williamson*
                                     Deborah D. Williamson

6390278.1